BILLY RAY BALLARD, alias Billie Ray Ballard,
Plaintiff in Error, v. STATE OF TENNESSEE,
Defendant in Error.

454 S.W.2d 193.

Court of Criminal Appeals of Tennessee. Dec. 3, 1969.

Certiorari Denied by Supreme Court May 4, 1970.

Z. Alexander Looby, Avon N. Williams, Jr., Nashville, for plaintiff in error.

George F. McCanless, Atty. Gen., Robert H. Roberts, Asst. Atty. Gen., A. A. Birch, Jr., Asst. Dist. Atty. Gen., Nashville, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The defendant below, Billy Ray Ballard, was indicted for first degree murder of one Daisy B. Vantrease. The jury convicted him of involuntary manslaughter and fixed his punishment at eleven months and 29 days in the Davidson County workhouse. In sentencing him, the trial judge added a ten-dollar fine to the workhouse imprisonment.

Between the hours of 5:00 and 6:00 A.M. on June 10, 1969, a young woman, Mrs. Vantrease, was shot in the neck with a .16 gauge double-barrelled shotgun and almost instantly killed. She was on the bed in an upstairs apartment bedroom of the defendant, a Nashville dentist. She was partly undressed; the gun was fired from close range and there were powder marks on her neck.

When officers arrived a few minutes after 6:00 A.M., they found in the yard a Captain Thompson, of the United States Air Force, who directed them upstairs.

The first officer to arrive, Sergeant Barnes, went to the bedroom and there saw the defendant standing in the middle of the floor smoking a cigarette. The gun was at the foot of the bed. Barnes asked him what happened. The defendant replied "I shot her." The court held this statement inadmissible under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966), and excluded it from the jury.

Later officers advised the defendant of his constitutional rights and he said that he and Mrs. Vantrease were playing with the gun and it was accidentally discharged. After a hearing out of the presence of the jury, the court held admissible this statement made to Lieutenant Larkin and Investigator Hunter. The defendant made no further statements and was arrested. When he arrived at the police station, he asked for his attorney, who was then called.

The defendant did not testify either at the hearings out of the presence of the jury or on the trial, and he offered no proof to the jury. His conviction depends on the admissibility of his statement to officers Larkin and Hunter.

He contends that his oral statement to these officers was inadmissible, principally because of his earlier admission to Sergeant Barnes, at which time he had not received *Miranda* warnings. He says that this admission to Larkin and Hunter was the fruit of the earlier inadmissible statement.

At the hearing out of the presence of the jury, Barnes said on cross-examination that there were two suspects at the house. For this reason the trial judge held

inadmissible the reply to his single question about what happened. Although the trial judge excluded the defendant's reply, "I shot her," we do not think that it was in fact inadmissible or that it rendered the defendant's subsequent statement inadmissible as tainted by the earlier one.

In People v. Quicke, 78 Cal.Rptr. 683, 455 P.2d 787 (1969), the Supreme Court of California, in considering an officer's inquiry "what happened," held:

> "* * * (P)olice officer in early morning hours came upon a parked car containing the body of a girl, with a sleeping young man on top of her. Upon arresting the man, the officer quite naturally asked what had happened. The defendant, practically without interruption, told his tragic, gruesome story. This saga of events does not constitute the planned prosecution interrogation which calls for the warnings prescribed in People v. Dorado, supra, 62 Cal.2d 338, 42 Cal.Rptr. 169, 398 P.2d 361; the police are not required to stop a person who 'wants to confess to a crime and tell him to be quiet until an attorney is obtained to represent him.' "

See also State v. Barnes, 54 N.J. 1, 252 A.2d 398 (1969), in which an officer, in arresting an escapee, asked "Whose stuff is this?" The Supreme Court of New Jersey held this is not the kind of custodial interrogation barred by *Miranda* in the absence of prior warnings.

We think that the statement to officers Larkin and Hunter was admissible, and this assignment is overruled.

■ After the selection of the jury and before the indictment had been read or a plea entered, the defen-

dant asked the court to hold a complete evidentiary hearing before the trial on the admissibility of any incriminating statement, admission or confession. The trial judge denied this request. When the testimony was offered, he properly excluded the jury and held a fair hearing and determined the admissibility of the statement in accordance with the principles set out in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. It was admissible under Miranda v. Arizona, supra. This assignment is overruled.

█ The defendant says that the court permitted the assistant district attorney general to comment on the defendant's failure to testify. The record does not disclose any comment by the prosecutor to this effect. In his closing argument, he replied to the defense argument that the State's proof had made out the defense. This reply was to the effect that it was the state's duty to develop all the proof. This did not improperly call attention to the failure of the defendant to testify. See Schweizer v. State, 217 Tenn. 569, 399 S.W.2d 743.

██ In considering the assignment on the weight of the evidence, this court is bound by the rule that a conviction in a criminal case will not be reversed on the facts unless the evidence preponderates against the verdict and in favor of his innocence. Schweizer v. State, supra. This he has not done.

█ The punishment for involuntary manslaughter does not include a fine. The judgment is modified to set aside the fine of $10 added to the imprisonment.

As modified, the judgment of the lower court is affirmed.

This case was heard and submitted to the Court prior to the enactment of Chapter 330 of the Public Acts of 1969 increasing the membership of the Court.

OLIVER and GALBREATH, JJ., concur.