PEOPLE *v* HERMAN JACKSON

Opinion of the Court

1. Criminal Law—Custodial Interrogation—Admissibility.

> Defendant's statement made in response to police questioning prior to the time police had advised him of his right to remain silent was properly admitted into evidence even where the investigation had already focused on him where the question was spontaneously asked, at the scene of the crime, and before defendant had been placed under arrest.

2. Criminal Law—Custodial Interrogation—On-the-Scene Investigation.

> An inquiry by a police officer of "what happened?" when asked of the defendant immediately after the officer had entered the apartment, observed the deceased in a pool of blood on the floor, and had seen the defendant standing in the doorway of an adjoining room did not constitute a custodial inter-

---

References for Points in Headnotes

[1, 2] 29 Am Jur 2d, Evidence §§ 555–557.

Comment Note.—Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.

What constitutes "custodial interrogation" within rule of Miranda v. Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.

[3, 5] 53 Am Jur, Trial § 926 *et seq.*
[4–6] 21 Am Jur 2d, Criminal Law § 271 *et seq.*

rogation requiring that the defendant be warned that his statements could be used against him prior to questioning even though the officer considered the defendant a suspect as soon as he saw the body on the floor.

3. CRIMINAL LAW—EVIDENCE—EXHIBITS—JURY DELIBERATION—DIAGRAM OF HOMICIDE SCENE.

The jury was properly allowed to use in the jury room during the deliberations a blackboard containing a diagram of the homicide scene drawn by a prosecution witness which had been exhibited in the courtroom for several days during the trial even though that diagram was not part of the admitted evidence where consent was given by defense counsel to allow the jury to use it during deliberations.

DISSENT BY O'HARA, J.

4. CRIMINAL LAW—TRIAL—ABSENCE OF DEFENDANT.
*Nothing in the nature of testimony may be taken in the absence of the criminal defendant.*

5. CRIMINAL LAW—EXHIBITS—JURY DELIBERATION—ABSENCE OF DEFENDANT—CONSENT OF COUNSEL.

*Granting the jury's request to use during deliberations a blackboard diagram of the homicide scene drawn by a prosecution witness which had been exhibited in the courtroom for several days during the trial but which was not admitted into evidence was reversible error even where the defendant's counsel consented to the granting of the request where the request was granted at a proceeding from which the defendant was absent.*

6. CRIMINAL LAW—TRIAL—ABSENCE OF DEFENDANT—DUE PROCESS.
*The right of a criminal defendant to be present whenever anything in the nature of testimony is taken is a right so essential to due process that no lawyer can waive that right for a defendant.*

Appeal from Recorder's Court of Detroit, Joseph E. Maher, J. Submitted Division 1 November 2, 1971, at Detroit. (Docket No. 10658.) Decided January 19, 1972. Leave to appeal denied, 388 Mich 767.

Herman C. Jackson was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia J. Boyle,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: V. J. Brennan, P. J., and J. H. Gillis and O'Hara,* JJ.

J. H. Gillis, J. Defendant, charged with second-degree murder, was found guilty by a jury of manslaughter (MCLA § 750.321 [Stat Ann 1954 Rev § 28.553]) and from his conviction and sentence he appeals.

The death occurred in defendant's ex-wife's apartment and resulted from a single bullet which entered the center of deceased's forehead. On the day in question, defendant went over to his ex-wife's apartment in which also resided deceased and her baby. His former wife left the apartment and upon her return, defendant met her at the rear door and asked her not to go in.

Two police officers were sent to the dwelling in question on a radio call which indicated a shooting may have occurred. At the trial one officer testified that he entered the apartment, observed deceased in a pool of blood on the floor, and then saw defendant standing in the doorway to the kitchen. On direct examination the officer testified he then had a "conversation"

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

with the defendant[1] after which he placed him under
arrest. On cross-examination defense counsel asked
the officer whether defendant had told him that he
was not in the same room as the deceased when the
shot was fired. The witness answered affirmatively.
Counsel then asked if defendant had indicated that
he was in the bathroom at the time he heard the shot.
Again, the officer's response was in the affirmative.
On redirect examination the prosecutor asked the
witness to recount the complete conversation. The
officer then testified that defendant stated he was
sitting on the toilet and that the deceased had asked
him how to load the gun. He said he had replied
that the gun was already loaded. On recross-exam-
ination it was admitted by the officer that defendant
made the above statements in response to his ques-
tion of "what happened?" Defense counsel there-
upon asked that the officer's testimony regarding
defendant's statement be stricken from the record
and asked for a *Walker* hearing as to the voluntari-
ness of defendant's statement. *People* v *Walker*
(on rehearing, 1965), 374 Mich 331. At said hearing
the officer indicated that upon entering the apart-
ment and seeing deceased he asked the defendant
what the deceased's name was. After obtaining this
information he immediately asked, "What hap-
pened?" The officer further testified that he con-
sidered defendant a suspect as soon as he saw the
body on the floor. The trial court denied the motion
to strike the testimony.

The controlling issue on this appeal is whether the
trial court committed reversible error by allowing
the prosecutor on direct examination of the officer to
make reference to defendant's conversation with
said officer and subsequently on redirect examination

---

[1] The nature of the conversation between the officer and defendant
was not solicited by the prosecution on direct examination.

to elicit defendant's entire statement where there
was no showing that the defendant had been in-
formed of the *Miranda* warnings.

In *Miranda* v. *Arizona* (1966), 384 US 436, 444 (86
S Ct 1602, 1612; 16 L Ed 2d 694, 706; 10 ALR3d
974), the United States Supreme Court stated:

"Our holding will be spelled out with some speci-
ficity in the pages which follow but briefly stated it
is this: the prosecution may not use statements,
whether exculpatory or inculpatory, stemming from
custodial interrogation of the defendant unless it
demonstrates the use of procedural safeguards
effective to secure the privilege against self-
incrimination."

The Court in *Miranda* then went on to state that:

"By custodial interrogation, we mean questioning
initiated by law enforcement officers after a person
has been taken into custody or otherwise deprived of
his freedom of action in any significant way.[4]"

The *Miranda* opinion further pointed out (384 US
at 477, 478 [86 S Ct at 1629, 1630; 16 L Ed 2d at 725,
726]):

"Our decision is not intended to hamper the tradi-
tional function of police officers in investigating crime
* * * When an individual is in custody on prob-
able cause, the police may, of course, seek out evi-
dence in the field to be used at trial against him.
Such investigation may include inquiry of persons
*not under restraint. General on-the-scene question-
ing as to facts surrounding a crime or other general
questioning of citizens in the fact-finding process* is
not affected by our holding. It is an act of respon-
sible citizenship for individuals to give whatever in-

---

"[4] This is what we meant in *Escobedo* when we spoke of an in-
vestigation which had focused on an accused." (Footnote of Su-
preme Court.)

formation they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." (Emphasis supplied.)

It is quite obvious that *any* questioning *anywhere* by a police officer generates some pressures and anxieties. However, before defendant's contention can be afforded substance under *Miranda,* the question that must be answered is whether he was in custody or deprived of his freedom of action in any significant way when the officer asked "What happened?" Therefore, it is necessary for this Court to determine under what circumstances the statements of defendant were made.

The question asked by the officer was not the product of a process of interrogation aimed at eliciting incriminatory statements from one whom an investigation had focused upon. Instead, it was a situation of an officer reacting naturally and spontaneously to the scene before him. It was a routine means of commencing an investigation and not an inquiry made pursuant to an already-launched investigation. The defendant had not as yet been placed under arrest; neither was he in foreign surroundings nor in a "police-dominated atmosphere" as stressed in *Miranda.*

In an almost identical factual situation[2] the Court of Criminal Appeals of Tennessee found that the *Miranda* rights were unnecessary. *Ballard* v. *State* (Tenn Crim App, 1969), 454 SW2d 193 (and cases cited therein). In that case a young woman was shot in the neck and killed instantly. She was lying on the bed in an upstair's apartment bedroom of the

---

[2] The similarity extends even to the point where a police officer testified on cross-examination that there were two "suspects" at the house.

defendant. The first officer to arrive went to the bedroom and there saw defendant standing in the middle of the floor. The gun was at the foot of the bed. The officer asked him what happened and the defendant replied, "I shot her." The court held that the statement was properly admissible. See also *People* v. *Robinson* (1970), 22 Mich App 124; *People* v. *Patton* (1968), 15 Mich App 198.

Consequently, we conclude there was no violation of *Miranda* in the case before us.

Defendant also asserts that it was reversible error for the trial court to grant the jury's request to have a blackboard brought to the jury room during deliberations. The blackboard contained a diagram of the location of the shooting as drawn by one of the prosecution witnesses. The following statement is taken from the record:

*"The Court:* Let the record indicate that the jury is deliberating and the defendant is not in court but Mr. O'Connell is here and assistant prosecuting attorney and the jury has made a request for the blackboard that was used to outline the place of the alleged occurrence, the drawing of the apartment, made by the witness Bulgin and there are some figures on there which were added by defense counsel O'Connell. Now, does counsel feel it would help the jury in arriving at a verdict to give them this particular blackboard without the lines drawn?

*"Mr. Galligan:* I have no objection.

*"Mr. O'Connell:* We have no objection to them seeing it since they requested it, your Honor.

*"The Court:* All right. We will let them take it. It is not in evidence. They have seen it. It may aid them in arriving at a verdict."

The trial in this cause commenced on September 23, 1970, and concluded on September 29, 1970. During much of this time the blackboard sat in front of the

jury. In light of defense counsel's consent and the fact that the jury had seen it for several days, there is no reversible error here. We fail to see how the defendant could have been prejudiced in any manner.

Defendant's other assignments of error are without sufficient merit to warrant discussion.

Affirmed.

V. J. Brennan, P. J., concurred.

O'Hara, J. (*dissenting*). While I agree with my colleagues on the first issue which may be characterized as the *Miranda*[1] question, I am not in accord with their holding that to allow the blackboard to be taken into the jury room even with the express consent of counsel did not constitute reversible error.

It is too well settled to admit of discussion that: "It is the rule that nothing in the nature of testimony may be taken in the absence of the defendant". *People* v. *Raider* (1931), 256 Mich 131, 138.

It is my precise point that allowing the jury to take the blackboard, unidentified and unadmitted as an exhibit, into the jury room raised it to the level of substantive evidence. Admittedly this was done out of the presence of the accused. This rendered the conviction constitutionally infirm. In the factual context of this case, it was crucial evidence. Distances, measurements and locations all bearing on the question of whether the accused discharged the weapon or whether it was discharged by the deceased were placed on the board by prosecution witnesses. Interlineations, corrections and overwritings were made on it by counsel. The very fact

---

[1] *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974).

the jury called for it establishes the weight they must have accorded it. It might very well have been the conclusive factor in their deliberations. To allow the jury to take it into the jury room whether it stood in the courtroom for several days or not was the same as allowing the officer who designated the spot at which the weapon was found in relation to the body of the deceased to testify again in defendant's absence.

Only two things could have happened in this case. Either the accused discharged the firearm or the deceased did. The answer to that question should not have been affected by the presence of the unadmitted piece of demonstrative evidence in the jury room during deliberations.

I am not unmindful that this Court has held times without number that certain issues cannot be raised the first time on review. I have signed and indeed authored such opinions. I am aware that trial counsel in this case may well have decided that to consent to taking the blackboard into the jury room was a wise trial tactic, and of benefit to the accused. However, I concur in the holding of this Court in *People v. Degraffenreid* (1969), 19 Mich App 702, 713. There are certain rights which are so essential to the concept of due process that no lawyer can waive them for a defendant. In my view the right of the defendant to be present when any testimony is taken is in that category. For this reason I would reverse and remand for a new trial.