PEOPLE v DORNER

1. CRIMINAL LAW—EVIDENCE—OBSERVATION BY POLICE OFFICER.

A police officer's observation of a large box of goods located on the rear seat of a defendant's automobile was proper where the officer had legally stopped the defendant's automobile for a traffic violation and thus clearly had a right to be near the defendant's automobile, and the uncontradicted testimony of the officer was that he observed the box as he walked by the vehicle prior to entering it to check the turn signals and brakes.

2. CRIMINAL LAW—EVIDENCE—OBSERVATION BY POLICE OFFICER—PROBABLE CAUSE—SUFFICIENT CAUSE.

The mere observation by a police officer of a large box and its contents in the rear seat of a defendant's automobile does not, without more, provide the officer with sufficient cause to believe that the defendant committed a crime or to believe that the goods are the fruits of a crime.

3. CRIMINAL LAW—QUESTIONING OF DEFENDANT—EVIDENCE—SUPPRESSION OF EVIDENCE—MIRANDA WARNINGS.

A police officer's questioning of a defendant, inquiring as to where the defendant had acquired some property located in the defendant's automobile, made before the defendant was given his *Miranda* rights, was proper and defendant's statements in reply should not have been suppressed where at the time the

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–7] 68 Am Jur 2d, Searches and Seizures §§ 39, 45.

Validity, under Federal Constitution, of warrantless search of automobile—Supreme Court cases. 26 L Ed 2d 893.

Lawfulness of search of motor vehicle following arrest for traffic violation. 10 ALR3d 314.

[2] 68 Am Jur 2d, Searches and Seizures § 23.

Search and seizure: Observation of objects in "plain view"—Supreme Court cases. 29 L Ed 2d 1067.

[3, 4] 68 Am Jur 2d, Searches and Seizures § 48.

Validity of consent to search given by one in custody of officers. 9 ALR3d 858.

[5–7] 68 Am Jur 2d, Searches and Seizures §§ 41–45.

officer asked the question he had no knowledge that the goods were stolen and no knowledge of the breaking and entering in which the goods were allegedly taken.

4. CRIMINAL LAW—QUESTIONING OF DEFENDANT—TOTALITY OF CIRCUMSTANCES—INVESTIGATION—ACCUSATORY STAGE—FOCUS ON DEFENDANT—MIRANDA WARNINGS.

A police officer properly asked a defendant, prior to giving the defendant a *Miranda* warning, whether he thought that some goods in the defendant's possession were stolen after the defendant had indicated to the officer where he had obtained the goods, where a review of the record indicates that under the totality of the circumstances a criminal investigation had not reached the accusatory stage nor focused on the defendant; the question was not the product of a process of interrogation aimed at soliciting incriminating statements from one upon whom an investigation had focused, and further, the defendant, who had been stopped for traffic violations, was not in custody nor substantially deprived of his freedom in any way at the time of the questioning.

5. SEARCHES AND SEIZURES—PROBABLE CAUSE—KNOWLEDGE OF POLICE OFFICER.

The Court of Appeals is limited to the facts, circumstances, and information known to an arresting officer at the time of the arrest and seizure when making a determination of whether the officer had probable cause to believe that a felony had been committed and that goods in the possession of the defendant were the fruits of that crime.

6. SEARCHES AND SEIZURES—ARREST—KNOWLEDGE OF POLICE OFFICER —CIRCUMSTANCES OF ARREST.

A police officer was justified in arresting a defendant and seizing goods where the facts known to the officer and the circumstances present at the time were the lawful stop of the defendant's vehicle for a traffic violation, the lawful view of a large box and its contents on the rear seat of the defendant's automobile, and lawfully obtained statements from the defendant indicating that the goods were stolen.

7. SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—PROBABLE CAUSE—KNOWLEDGE OF POLICE OFFICER—CIRCUMSTANCES OF ARREST—EVIDENCE—SUPPRESSION OF EVIDENCE.

Articles found on the rear floor and under the front seat of a defendant's automobile where properly discovered and seized by a police officer without a search warrant where the facts known

to the officer and the circumstances present at the time furnished the officer with probable cause to believe the defendant's vehicle contained fruits of a crime other than those which were discovered by the officer when lawfully viewing the vehicle; the articles thus obtained were therefore erroneously suppressed by the trial court.

Appeal from Presque Isle, Philip J. Glennie, J. Submitted November 10, 1975, at Detroit. (Docket No. 23156.) Decided December 10, 1975.

Robert A. Dorner was charged with breaking and entering with intent to commit larceny. Defendant's motions to suppress the evidence and to suppress statements made by the defendant to the arresting officer were granted. The people appeal by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Elmer L. Radka,* Prosecuting Attorney (by Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director) for the people.

*Hile & Livo,* for defendant.

Before: DANHOF, P. J., and McGREGOR and N. J. KAUFMAN, JJ.

McGREGOR, J. The defendant was charged with breaking and entering a building with the intent to commit larceny. MCLA 750.110; MSA 28.305. The defendant's arrest arose when the automobile that he was driving was stopped by Trooper Rupert L. Boynton of the Michigan State Police. At the time of the stop, Trooper Boynton observed some evidence in the defendant's car and certain statements were made to Trooper Boynton by the defendant. Defendant filed both a motion to sup-

press the evidence and a motion for a *Walker*[1] hearing to suppress the statements. Both motions were granted by the trial court in an opinion dated October 2, 1974. The people sought and were granted leave to appeal from these adverse rulings.[2]

Before reaching the issues raised, it is necessary to set forth the facts surrounding defendant's arrest. On March 9, 1973, at approximately 3:30 in the afternoon, Trooper Boynton was on duty and proceeding east on M-32. At this time, he observed the defendant's vehicle proceeding west on M-32 and, as he passed the defendant's vehicle, Trooper Boynton noticed that the vehicle did not have an outside rear view mirror, contrary to MCLA 257.708; MSA 9.2408. Trooper Boynton then turned his police vehicle around in order to stop the defendant's vehicle for the violation and to make a vehicle safety check. As he was turning, Trooper Boynton noticed that the defendant had pulled his vehicle off to the right side of the road, but that in making the turn, the defendant failed to use his turn signal indicator, contrary to MCLA 257.648; MSA 9.2348.

Trooper Boynton proceeded to the point where the defendant's vehicle was stopped, pulled up behind the vehicle and exited his car. At the same time, defendant exited from his car and met Trooper Boynton midway between the two vehicles. Trooper Boynton asked the defendant for identification, which was produced. Trooper Boynton then informed the defendant that the reason he was being stopped was because his vehicle did

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[2] This case arose prior to *Jackson County Prosecutor v Court of Appeals,* 394 Mich 527; 232 NW2d 172 (1975), which made appeals by the people a matter of right rather than by leave.

not have an outside rear view mirror and that he (Trooper Boynton) wished to check the turn signal indicators on the defendant's vehicle. Trooper Boynton testified that as he and the defendant were approaching the defendant's vehicle, he observed a large cardboard box containing a number of cigarettes, wrenches with price markings, watches, and other various goods on the rear seat.

Trooper Boynton then entered the defendant's vehicle, checked the turn signal indicators, and also tried the brakes. Trooper Boynton testified that it was his normal procedure to enter a vehicle when he checked the turn signal indicators since, once inside, he could then check the brakes. He further testified that as he was entering the car, he noticed other goods on the floor of the back compartment, as well as a long dagger-type knife protruding out from beneath the front seat. There was no testimony presented to indicate whether the trooper requested permission to enter the defendant's vehicle, or if the trooper used his authority to gain access to the vehicle. After exiting the defendant's vehicle, Trooper Boynton asked the defendant where he had acquired the property that was on the rear seat. The defendant responded that he had bought the goods at a junior college in Traverse City and further stated that the goods were "selling like hotcakes". Following this reply, it is not clear whether Trooper Boynton then asked the defendant what was meant by that statement or whether Trooper Boynton asked the defendant whether he thought the goods were stolen. Whatever the case, the defendant responded, "Well, I think they're stolen, that's why I'm taking them back".

After the defendant finished making the above statement, Trooper Boynton advised him that he

and the occupant of the car were under arrest. The officer then removed the property from the back seat of the defendant's vehicle and placed it in his car. At this point, the defendant was advised of his constitutional rights by Trooper Boynton and instructed to say nothing further.

The first inquiry that must be made is whether Trooper Boynton was in a place where he had a right to be when he first observed the goods in question. *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973). If Trooper Boynton was not, then the trial court ruled correctly, since the subsequent statements of the defendant and the subsequent seizure of the goods would have been tainted by the primary illegality of the officer's unauthorized view. See *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963), and *People v Walker,* 27 Mich App 609; 183 NW2d 871 (1970). If, on the other hand, Trooper Boynton was rightfully positioned, then he had a right to observe whatever fell within his view and to utilize whatever information he so obtained. *Whalen, supra, People v Goodman,* 58 Mich App 220; 227 NW2d 261 (1975).

In the present case, it is not disputed that Trooper Boynton clearly had a right to be near the defendant's automobile, having lawfully stopped the defendant for a traffic violation. What is disputed, however, is whether Trooper Boynton first observed the goods in question from within or without the defendant's vehicle. While the trial court's opinion is ambiguous on this point, our own independent examination of the record convinces us that Trooper Boynton did originally view the goods resting on the back seat from without the car. The only evidence presented on this issue was the uncontradicted testimony of Trooper

Boynton that he observed the goods as he walked by the defendant's vehicle prior to entering it. If the trial court did conclude otherwise, its conclusion would not have been supported by the record and, therefore, would have been clearly erroneous.

Furthermore, it is not unreasonable for a police officer to view the interior of an automobile which has been lawfully stopped for a traffic violation, regardless of whether or not the officer ever intended to enter the vehicle. Such an observation in the present case would have undoubtedly disclosed both the presence and the contents of the large box on defendant's rear seat. Thus, since Trooper Boynton had a right to be near the defendant's vehicle and also had a right to observe the vehicle's interior, his observation of the large box and its contents was proper under the present circumstances. This being the case, we need not consider whether the goods would have been properly viewed by Trooper Boynton, had they not been observed until after he entered the defendant's vehicle. We will assume, however, that such a view would have been illegal and that, consequently, Trooper Boynton's view of the remaining articles on the floor and his view of the knife protruding from under the front seat were improper. See *People v Lee,* 371 Mich 563; 124 NW2d 736 (1963); *Cf. People v Carl Smith,* 39 Mich App 337; 197 NW2d 528 (1972). Thus, whatever additional information was gained in this manner could not have been properly used by Trooper Boynton.

We are also of the opinion that the view of the large box and its contents did not, without more, provide Trooper Boynton with probable cause either to arrest the defendant or to seize the goods. We reach this conclusion under both the "contraband" test of *People v White,* 46 Mich App 195;

207 NW2d 921 (1973), and the "mere evidence" test of *People v Goodman, supra.* In either case, the mere observation of the goods in question did not furnish Trooper Boynton with either sufficient cause to believe that the defendant had committed a crime, or sufficient cause to believe that the goods in question were the fruits of a crime.

Having so decided, we must make a second inquiry. Had a criminal investigation so focused on the defendant that, under the totality of the circumstances, Trooper Boynton should have given a *Miranda*[3] warning to the defendant before asking either the first or second question? *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975). If the defendant was entitled to a *Miranda* warning before either question, then the trial court would have also ruled correctly since the statements would have been improperly obtained and the subsequent seizure of the goods would have been illegally tainted thereby. This result would follow since the statements could not have been properly used to overcome the absence of probable cause, either for defendant's arrest or the seizure of the goods. If, however, Trooper Boynton was not required to give warnings, then the trial court's suppression of the defendant's statements would have been error. Additionally, the statements then could also have been used to aid in the establishment of probable cause.

Under the totality of the circumstances, we find that a criminal investigation had not so focused on the defendant, either before the first or second question, as to require the giving of a *Miranda* warning.

As stated previously, at the time of the asking of

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

the first question, Trooper Boynton did not have probable cause either to arrest the defendant or to seize the goods. In fact, Trooper Boynton had no knowledge that the goods were stolen, nor did he have any knowledge of the alleged breaking and entering from which the goods were allegedly taken. At most, he had only a suspicion that the goods had been stolen somewhere. In *People v Coppernol,* 59 Mich App 745, 750; 229 NW2d 913 (1975), a similar situation was present. There, the Court stated:

"At this point it was not apparent that any crime at all had been committed. The officers were investigating a report of suspicious activity. Their investigation had not reached the accusatory stage. Although there were three officers at the car when the initial questions were asked, the defendant was not 'in custody' as he contends. General on-the-scene questioning of citizens in the fact-finding process under circumstances such as these is not custodial interrogation of the type requiring forewarning as to constitutional rights. *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), *People v Jeffries,* 39 Mich App 506; 197 NW2d 903 (1972), *People v Hutton,* 50 Mich App 351; 213 NW2d 320 (1973)."

Thus, the trial court clearly committed error in suppressing the defendant's response to the first question.

Trooper Boynton's second question presents more difficulty, but an examination of the whole record convinces us that, here too, the trial judge erred in his ruling. A criminal investigation still had not, under the totality of the circumstances, reached the accusatory stage, nor had it focused only on the defendant. Prior to the asking of this question, it was still not at all apparent that any crime had been committed by the defendant or

that the goods were fruits of a crime. It would be illogical to conclude that a criminal investigation has so focused on a defendant as to require the giving of *Miranda* warnings when the arresting officer lacks sufficient cause to believe that any crime has been committed, let alone by the defendant. In the instant case, although Trooper Boynton's suspicions may have grown somewhat stronger after the defendant's response to his first question, at that time his investigation must be considered to have been in its preliminary stages. Moreover, regardless of the content of Trooper Boynton's question, it appears that in either case it was a spontaneous reaction to the defendant's first response. The response, "they're selling like hotcakes" is of the type which would naturally provoke some kind of follow-up question. As such, it was not the product of a process of interrogation aimed at soliciting incriminatory statements from one upon whom an investigation had focused. *People v Herman Jackson,* 37 Mich App 664; 195 NW2d 312 (1972), is noteworthy in this regard. In that case, a police officer responded to a radio call indicating that a shooting may have occurred. He entered the dwelling in question and saw the deceased in a pool of blood on the floor and the defendant standing in the doorway to the kitchen. The officer testified that, upon seeing the deceased, he asked the defendant what the deceased's name was. He then asked "what happened?". At the evidentiary hearing the officer testified that he considered the defendant a suspect as soon as he saw the body on the floor. On appeal, it was argued that these questions could not have been asked without first informing the appellant of his *Miranda* rights. The court went on to state:

"The question asked by the officer was not the prod-

uct of a process of interrogation aimed at eliciting incriminatory statements from one whom an investigation had focused upon. *Instead, it was a situation of an officer reacting naturally and spontaneously to the scene before him. It was a routine means of commencing an investigation and was not an inquiry made pursuant to an already-launched investigation.* The defendant had not as yet been placed under arrest; neither was he in foreign surroundings nor in a 'police-dominated atmosphere' as stressed in *Miranda."* 37 Mich App at 669. (Emphasis added.) See also *People v Robinson,* 22 Mich App 124; 177 NW2d 234 (1970).

We find these cases to be controlling of the present situation. Furthermore, although the defendant had been stopped for the traffic violations at the time of questioning, he was not in custody, nor was he being substantially deprived of his freedom of action in any significant way. *People v Wasson,* 31 Mich App 638; 188 NW2d 55 (1971), *People v Reed, supra,* 357, fn. 6. Thus, under the totality of the circumstances, we must conclude that the defendant was not entitled to *Miranda* warnings prior to questioning and that, as a result, the trial court erred in ruling otherwise.

One inquiry remains. At the time of defendant's arrest, did Trooper Boynton have probable cause to believe that a felony had been committed and that the goods in question were fruits of that crime? If such probable cause did not exist, then, of course, the goods in question were properly suppressed by the trial court. If, on the other hand, Trooper Boynton did have probable cause to arrest the defendant and seize the goods, then the trial court's ruling would have been error.

In making this determination, we are limited to the facts, circumstances and information known to Trooper Boynton at the time of the arrest and seizure. *People v 7th District Judge,* 55 Mich App 471; 222 NW2d 778 (1974). The facts known to

Trooper Boynton and the circumstances present at the time were as follows: (1) the lawful stop of defendant's vehicle for a traffic violation; (2) the lawful view of the large box and its suspicious contents on the rear seat of defendant's vehicle, and (3) the lawfully obtained statements from the defendant indicating that the goods were stolen. These circumstances were sufficient to justify the arrest of the defendant and the seizure of the goods which were legally viewed. In addition, these circumstances furnished Trooper Boynton with probable cause to believe that defendant's vehicle contained other fruits of the crime. Consequently, he could properly conduct a warrantless search of the vehicle, under the "automobile" exception to the general warrant requirement. See *People v White,* 392 Mich 404; 221 NW2d 357 (1974). Such a search would undoubtedly have disclosed the presence of the additional articles on the floor of the rear compartment as well as the presence of the knife under the front seat. This being the case, we conclude that these articles were also properly seized. While Trooper Boynton may have illegally viewed these articles prior to removing the box from defendant's car, the fact still remains that Trooper Boynton, without regard to this earlier view, had justification to search defendant's car. Thus, granting the establishment of the primary illegality, this evidence was obtained by means sufficiently distinguishable to be purged of the primary taint rather than being obtained by exploitation of that illegality. *Wong Sun v United States, supra, People v Rush,* 48 Mich App 478; 210 NW2d 467 (1973).

We therefore hold that, under the circumstances of the instant case, the trial court committed error in suppressing both the seized evidence and the defendant's statements.

Reversed and remanded.