PEOPLE v BLACKBURN

Docket No. 70148. Submitted February 23, 1984, at Detroit.—Decided
    June 19, 1984.

    Clarence C. Blackburn was charged with first-degree murder and
        felony-firearm and, following a jury trial in Wayne Circuit
        Court, Irwin H. Burdick, J., was convicted of second-degree
        murder and felony-firearm. Prior to trial, defendant moved to
        suppress any reference to his prior conviction for carrying a
        concealed weapon for impeachment purposes if he took the
        stand. The trial court denied defendant's motion on the basis
        that evidence of that prior conviction would be proper for
        impeachment, because the prior crime was similar to the
        charged crime. At trial, defendant took the stand and, during
        direct examination, brought out the fact of the prior conviction.
        Defendant also moved, prior to trial, to suppress evidence of
        certain oral statements made by him to the police. At the
        hearing on that motion, the testimony established that, when
        the police arrived at the scene of the shooting, the police told
        the people who were there, of which defendant was one, that
        they would have to remain until the police could obtain state-
        ments as to what happened, the police having already asked
        what had happened without receiving any response. Thereafter,
        defendant, without being advised of his constitutional rights,
        stated that he "would save everybody a lot of trouble" and
        indicated that he was "the one that did it". Prior to being

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 778, 786.
    29 Am Jur 2d, Evidence § 327.
[2] 5 Am Jur 2d, Appeal and Error § 602.
[3-6] 21A Am Jur 2d, Criminal Law § 974.
    29 Am Jur 2d, Evidence §§ 555-557.
    What constitutes "custodial interrogation" within rule of Miranda v
    . Arizona requiring that suspect be informed of his federal consti-
    tutional rights before custodial interrogation. 31 ALR3d 565.
    Necessity of informing suspect of rights under privilege against self-
    incrimination, prior to police interrogation. 10 ALR3d 1054.
[7] 21A Am Jur 2d, Criminal Law §§ 955, 1006.
    Right of indigent defendant in criminal case to aid of state by
    appointment of investigator or expert. 34 ALR3d 1256.

advised of his constitutional rights for the first time at his booking at the police station, defendant voluntarily stated on three occasions that he had shot the deceased. After being advised of his rights, defendant voluntarily stated that he hoped the deceased would die. The trial court ruled that evidence of all of the defendant's statements could be used at trial. That evidence was subsequently presented at trial. Prior to trial, defendant, as an indigent, sought to have the court provide funds so that he could hire a private investigator who would look for witnesses. The trial court denied the request. Defendant appealed. *Held:*

1. The trial court clearly erred in holding that evidence of the prior conviction could be used for impeachment purposes because of the similarity of the prior offense and the charged offense. The similarity of the prior offense and the charged offense is a factor militating against the use of evidence of a prior conviction rather than for its use. While under some circumstances the erroneous admission of evidence of a prior conviction might be deemed to be harmless error, the error in this case cannot be said to be harmless.

2. Although defense counsel elicited the fact of the existence of the prior conviction during the direct examination of the defendant, the eliciting of that fact on direct examination of the defendant does not constitute a waiver of the question of the propriety of the trial court's ruling, since it is clear that defense counsel's action was a strategic decision which was a result of the trial court's erroneous ruling on the question of the admissibility of this evidence.

3. Since defendant and the others were under the reasonable impression that they were not free to leave, and since defendant's first statement was in response to a police inquiry as to "what happened", defendant's first statement was the product of custodial interrogation by the police. Evidence of the first statement, accordingly, was not admissible because it was the product of custodial interrogation by the police prior to the advising of defendant of his constitutional rights.

4. The statements made subsequent to the first statement but prior to the advising of defendant of his constitutional rights, while not the product of custodial interrogation, were the fruit of the improperly secured first statement. Accordingly, evidence of those statements should have been suppressed.

5. Evidence of the statement made after the advising of defendant of his rights was properly admitted and may be admitted on retrial of this matter.

6. The question of whether funds to hire a private investiga-

tor should be supplied to an indigent criminal defendant is a matter addressed to the sound discretion of the trial court. The trial court did not abuse its discretion in denying such funds in this case.

7. It is unnecessary to determine whether the examining magistrate abused his discretion by binding defendant over on a charge of first-degree murder, since retrial is mandated by the other errors and on retrial the defendant will be facing a charge of second-degree murder rather than first-degree murder.

Reversed and remanded.

1. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — IMPEACHMENT.

It is error for a trial judge, in determining whether to admit evidence of a defendant's prior convictions for impeachment purposes, to consider the similarity of the prior offense and the charged offense as a factor in favor of permitting the use of evidence of the prior conviction; the permitting of the use of evidence of the prior conviction under such circumstances cannot be said to be harmless error where there were no eyewitnesses to the killing which resulted in the defendant's being charged with murder and the evidence used to establish that the homicide constituted murder and was not justifiable was less than overwhelming.

2. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — PRESERVING QUESTION.

The fact that defense counsel brings out during the direct examination of a criminal defendant that the defendant has a prior conviction does not act as a waiver of appellate review of the question of whether the trial court erroneously denied a pretrial motion to suppress evidence of defendant's prior conviction.

3. CRIMINAL LAW — CUSTODIAL INTERROGATION.

Custody, for the purposes of deciding whether there has been custodial interrogation by the police, arises when a person has been deprived of his freedom of action in a meaningful way.

4. CRIMINAL LAW — CUSTODIAL INTERROGATION.

The determination of whether a person is in custody at the time police interrogation took place must be based upon an examination of the totality of the circumstances; the key question to be answered in determining whether the person was in custody is whether that person could reasonably believe that he was not

free to leave; if the person has that reasonable belief, the person is in custody for purposes of determining whether there was custodial interrogation by the police.

5. CRIMINAL LAW — CUSTODIAL INTERROGATION.

There is custodial interrogation where the police indicate to a group of persons that they will not be able to leave until the police have obtained statements concerning a crime and the police then ask the group "what happened"; any statement given in response to that question is the product of police interrogation.

6. CRIMINAL LAW — CONFESSIONS — CUSTODIAL INTERROGATION — FRUIT OF THE POISONOUS TREE.

A voluntary statement made by a criminal defendant subsequent to a statement secured by means of custodial interrogation at which the defendant had not been advised of his rights should be suppressed as being the fruit of the poisonous tree where there is a causal connection between the prior failure to advise the defendant of his rights and the subsequent giving of the voluntary statement; such a causal relationship exists where the voluntary statement is made shortly after the improperly secured statement and prior to the advising of the defendant of his constitutional rights.

7. CRIMINAL LAW — INDIGENT DEFENDANTS — PRIVATE INVESTIGATORS.

The question of whether an indigent criminal defendant should be supplied by the court with funds to hire an investigator to assist in locating witnesses is addressed to the trial court's discretion.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Richard B. Ginsberg),* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and MAC-KENZIE and E. A. QUINNELL,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant was charged in the Wayne County Circuit Court with premeditated first-degree murder, MCL 750.316; MSA 28.548, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, and felony-firearm. He was sentenced to serve a term of two years imprisonment for the felony-firearm conviction to be followed by a term of from 10 to 20 years imprisonment for the murder conviction.

The underlying facts may be briefly summarized. Defendant, while at his brother's residence, shot and killed S. R. Gentry. Defendant testified that Gentry refused to leave the trailer after being asked to do so and that, rather, Gentry physically assaulted him. Defendant claimed that the shooting occurred in self-defense. Defendant's brother testified that he had asked Gentry to leave his place two or three times, but Gentry would not leave.

In rebuttal, the prosecution called three witnesses who testified that the deceased was a peaceful and law-abiding person.

Prior to trial, defense counsel moved to suppress evidence of his client's prior conviction for carrying a concealed weapon should his client testify. In denying this motion, the trial court said:

"Actually, if he was convicted for a C.C.W., it was punishable in excess of one year under the law. It doesn't make any difference whether it involves theft, dishonesty or false statement. *If what we are talking about here, a previous conviction similar to the crime with which he is charged, now the Court would have to give it even greater consideration because it would increase his probability of his having committed this crime.*" (Emphasis added.)

As a result of this ruling, defense counsel elicited the fact of the prior conviction himself during direct examination of defendant.

The trial court clearly erred in treating the similarity of the charged offenses to the previous conviction as a factor which weighed in favor of permitting impeachment by means of evidence of the prior conviction for carrying a concealed weapon. *People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979); *People v Woods,* 97 Mich App 197; 293 NW2d 762 (1980). In *Baldwin,* as here, the defendant testified that he had killed the victim, but claimed that he acted in self-defense. The trial court treated the similarity of Baldwin's prior conviction to the charged offense as a factor in favor of allowing evidence of the prior conviction to be used for impeachment purposes. The Supreme Court reversed, without discussing whether the error could be deemed harmless. We nonetheless believe that an error of the type committed here may be deemed harmless in an appropriate case. This is not such a case, however. Apart from defendant, there were no eyewitnesses to the shooting. The evidence that the homicide constituted murder and was not justifiable was significantly less than overwhelming.

Defense counsel brought out the fact of the prior conviction on direct examination. However, since this strategic decision was the result of the trial court's erroneous treatment as to the use which could be made of the evidence of the prior conviction, this issue is not waived. *People v Robert Barker,* 411 Mich 866; 306 NW2d 100 (1981).[1]

---

[1] Defendant also contends that application of the relevant criteria set forth in *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978), precluded use of evidence of the conviction for impeachment. While we do not reverse on this basis, it is difficult to see how proper application of the *Crawford* factors could support the use of evidence

Defendant made various brief statements to the police. The first was given before defendant was informed of his rights pursuant to *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Ecorse Police Officer James Hunt explained the circumstances under which this statement was made at the motion to suppress:

"*Q.* *[By the prosecutor]:* What did you do after you identified the people who were present [at the scene]?

"*A.* I saw who was present. From looking at the fellow on the floor, apparently to me, he had been shot. At least, I believed so. And the nature of the call had been a shooting. I immediately had the other people in the room take a seat on the couch and on a chair, after it had been checked for weapons, to make sure there were no weapons on the couch.

"*Q.* What happened then?

"*A.* I told everyone to fold their hands in their lap. Other officers and I took a look around the immediate area for any other weapons.

"*Q.* Did you find any weapon?

"*A.* No. I asked if anyone had seen what had happened and received no answer. By this time, the rescue unit arrived and firemen were in the room trying to do something with the fellow on the floor. Once they removed him from the trailer, I informed everyone in

---

of the carrying a concealed weapon conviction in this case. In any event, the trial court is cautioned that, pursuant to MRE 609(a)(2), it must articulate on the record the factors which it considered in determining that evidence of the conviction is admissible for impeachment purposes.

In this regard, we note our disagreement with the trial court's opinion that, because carrying a concealed weapon is punishable by more than one year in prison, it "doesn't make any difference whether it involves theft, dishonesty or false statement". While MRE 609(a)(1) permits use of evidence of a defendant's conviction for impeachment purposes solely because it was punishable by more than one year's imprisonment, in determining whether discretion should be exercised to allow this impeachment, it always makes a difference whether the conviction involves theft, dishonesty or false statement. Convictions for offenses involving dishonesty obviously are more probative of a defendant's credibility than convictions for offenses which involve no elements of dishonesty.

the trailer they would have to remain until I could obtain statements from them as to what happened. I then asked if anyone knew where the gun was that was involved and received no answer.

"[Defendant] stood up and said, 'I'll save everybody a lot of trouble. I'm the one that did it.' "

As defendant was being taken from the trailer to the police car which was to transport him to the police station for booking, Officer Leonel Lopez heard defendant twice say: "I'm the one who did it. I'm the one who shot him." Defendant, during the drive to the police station, made yet another statement to Officer Edward Watters under the following circumstances:

"*Q.* * * * And did you say anything to the defendant after he was placed in your car?

"*A.* I had asked him if he had remembered me.

"*Q.* I see.

"*A.* I had been in the Detective's Bureau in plain clothes. This particular time, I was in uniform. I asked him if he remembered me.

"*Q.* And did he respond to that?

"*A.* Yes, he did.

"*Q.* What happened?

"*A.* We were driving to the station. We were in the area of Southfield and Jefferson.

"*Q.* How far was that away from the trailer where you picked the defendant up?

"*A.* Approximately three minutes away. At that point, [defendant] stated that he'd shot the guy because he was 'fucking' with him.

"*Q.* Those were his exact words?

"*A.* Yes.

"*Q.* Had you said anything to him, prior to that?

"*A.* Not with regard to the shooting, no, sir.

"*Q.* What happened after he made that statement?

"*A.* I advised Mr. Blackburn not to say anything until we got to the station. Then he could be advised of his

rights if he wants to make a statement. At that time, he can.

"*Q.* Was anything else said to Mr. Blackburn enroute to the station?

"*A.* No, sir."

Officer Leonel Lopez actually booked defendant. At the time of the booking, defendant was advised of his *Miranda* rights. In Officer Lopez's words, the following then happened:

"Once that was done, I walked [defendant] to a cell-block. Then he asked me, 'How's he doing?' I told him 'I don't know. I haven't been out there,' meaning, the hospital. He says, 'I hope the mother—F' dies.' That was the last I had talked with [defendant]."

Defendant asserts on appeal that evidence of his first statement must be suppressed because it was made without his having the benefit of the *Miranda* warnings and that each of his subsequent statements must be suppressed as the fruit of the poisonous tree.

To resolve this issue, we must first determine whether defendant was in custody such that he should have been given *Miranda* warnings prior to Officer Hunt's initial inquiry as to "what happened".[2] Custody arises when a person has been

[2] We acknowledge that the members of this Court continue to disagree over whether, as a general rule, *Miranda* warnings must be given when the police investigation focuses on one person or whether *Miranda* warnings need only be given to a defendant who is in custody. See *e.g., People v Wallach,* 110 Mich App 37, 47-50; 312 NW2d 387 (1981), *vacated on other grounds* 417 Mich 937; 331 NW2d 730 (1983). This case is unusual, however, in that defendant was clearly not the focus of the investigation when he was asked, "what happened", although, as we discuss, *infra,* he was in custody. Normally, the focus test works in the defendant's favor. To the extent that, in a particular case, the custody test works to the defendant's advantage, it must be applied. Custody is the test required by the United States Supreme Court as a matter of federal constitutional law, and the states must, in every case, apply a standard which is at

deprived of his freedom of action in a meaningful way. *People v Belanger,* 120 Mich App 752, 760; 327 NW2d 554 (1982). To determine whether a defendant was in custody at the time of interrogation, the totality of the circumstances must be examined. The key question is whether the defendant could reasonably believe that he was not free to leave. See, *e.g., United States v Hall,* 421 F2d 540, 544-545 (CA 2, 1969). If so, that defendant is in custody.

On appeal, the prosecution notes that Officer Hunt had not focused his suspicions on any one of the four people in the trailer at the time he asked "what happened" and, accordingly, argues that Officer Hunt was not required to give *Miranda* warnings. However, we agree with the Vermont Supreme Court's holding in *State v Hohman,* 136 Vt 341; 392 A2d 935, 940 (1978), that, for the purposes of determining if a defendant is in custody, the degree of investigative focus is pertinent only to the extent that it contributes to a defendant's reasonable belief that he is not free to leave. Since in this case Officer Hunt specifically told defendant and the other persons in the trailer that they could not leave until they gave statements concerning what happened, it is manifest that defendant was in custody for purposes of *Miranda.*[3] *Cf. Commonwealth v Meyer,* 488 Pa 297; 412 A3d 517 (1980), wherein evidence of a statement given by the defendant to a state police officer after being asked "what happened" was ruled inadmissible because the defendant had been

least as protective of the individual's federal constitutional rights as is required by the United States Supreme Court.

[3] It should also be noted that, until Officer Hunt said that everybody would have to remain on the scene until he could get statements, he got no response to any of his inquiries. The compulsion of detention, then, was actually necessary to get defendant to talk.

required to stay at the scene by a local police officer to wait for a state trooper and the defendant was not advised of his rights under *Miranda* before questioning by the state police.

The prosecution also relies heavily on *People v Herman Jackson,* 37 Mich App 664; 195 NW2d 312 (1972). There, this Court held that evidence of the defendant's statement in response to the officer's question "what happened" was admissible. However, as defendant on appeal notes, unlike the situation in *Herman Jackson,* here defendant was specifically told that he could not leave until he gave a statement. Since the crucial issue is whether the defendant reasonably believed he was free to leave, this distinction mandates a different result than that reached in *Herman Jackson.* Thus, evidence of defendant's initial admission that he shot the deceased should have been suppressed.

We now turn to whether evidence of any of the other statements must be suppressed as the fruit of the poisonous tree. Issues involving the suppression of evidence of statements because they are tainted by antecedent police misconduct usually arise via a claim that an illegal arrest has tainted a subsequent confession. See, *e.g., People v Martin,* 94 Mich App 649, 653-654; 290 NW2d 48 (1980). In our opinion, the same basic question posed in *Martin*-type cases must be resolved here, *i.e.,* was there any causal connection between the illegality or misconduct (here, the failure to give *Miranda* warnings) and the subsequent statements. See, *Martin, supra.*

Utilizing this approach, we conclude that evidence of all of the statements given by defendant before he was given *Miranda* warnings must be suppressed. The time span between the initial

statement given without benefit of *Miranda* warnings and the statements made on the way to and in the patrol car was slight. Although these subsequent statements were not the product of interrogation but, rather, were volunteered, defendant, having already admitted to the shooting, could well have believed that it was pointless not to speak freely. As defendant had not been given *Miranda* warnings before these statements were made nor had the police advised him not to say anything further at this time, we find that there was a causal connection between the initial failure to give *Miranda* warnings and the pre-booking statements.

As to the last statement (*i.e.,* defendant's professed hope that the deceased would die), this was volunteered by defendant after he was given *Miranda* warnings. We find these circumstances (the volunteered nature of the statements after receiving warnings) sufficient to break any causal connection between the initial failure to give *Miranda* warnings and the last statement. Evidence as to the last statement, therefore, was admissible.

We need not decide whether the erroneous admission of evidence of defendant's statements constituted harmless error, as we are specifically reversing on the basis of the lower court's handling of defendant's motion to suppress evidence of his prior conviction for carrying a concealed weapon for impeachment purposes.

Defendant also argues that he was deprived of his constitutional right to due process of law because of the denial of his motion for funds to hire an investigator who could possibly locate witnesses able to testify about the deceased's violent and aggressive character. In making this argument, defendant relies heavily on *Mason v Arizona,* 504

F2d 1345 (CA 9, 1974). However, under *Mason,* "such assistance is not automatically mandatory but rather depends upon the need as revealed by the facts and circumstances of each case". 504 F2d 1352. In our opinion, the trial court did not abuse its discretion in finding that a sufficient showing of need for the investigator had not been made in this case.

Defendant's contention that the magistrate abused his discretion by binding defendant over on a charge of first-degree murder is rendered moot because he was actually convicted of second-degree murder and thus acquitted of first-degree murder. Of course, on retrial, defendant will be facing a charge of second-degree, and not first-degree, murder.

Reversed and remanded.