*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RODNEY RONEIL PRITCHETT II,

Defendant-Appellant.

UNPUBLISHED
August 20, 2020

No. 347598
Wayne Circuit Court
LC No. 18-001656-01-FC

Before: REDFORD, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and his sentence to prison terms of 20 to 40 years for the murder conviction and two years for the felony-firearm conviction, to be served consecutively. We affirm.

## I. BACKGROUND FACTS

Defendant's convictions arise from the December 2, 2017 shooting death of Shunsaiah Glaze at the Greektown Casino Hotel in Detroit. While defendant and several others attended a party in one of the hotel rooms, the victim struck defendant with a bottle in what appeared to be an unprovoked attack. A fight ensued until the victim and other members of his group fled from the hotel room. After the victim had left the room, defendant and his acquaintances chased the victim. Surveillance video footage captured defendant's pursuit of the victim down a hallway. Defendant caught up to the victim who had entered an elevator. Defendant made his way into the elevator and punched one of the victim's acquaintances. The victim attempted to push defendant away but defendant shot him at point-blank range in the chest with a .40 caliber handgun. The victim died from the injuries caused by defendant.

Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), and felony-firearm. The trial court instructed the jury on the lesser offenses of second-degree murder and voluntary manslaughter. The jury convicted defendant of second-degree murder and felony-firearm.

-1-

On appeal, in a brief filed by appointed appellate counsel, defendant claims that the prosecution committed misconduct. Defendant raises several additional claims of error in a pro se Standard 4 brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

## II. ANALYSIS

### A. PROSECUTORIAL MISCONDUCT

Defendant argues that he is entitled to a new trial because, during closing argument, the prosecutor improperly evoked sympathy for the victim and urged the jury to convict defendant as part of its public duty. Defendant, however, failed to object to the prosecutor's closing argument. Therefore, he failed to preserve this claim of error. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). We review unpreserved issues for plain error affecting defendant's substantial rights. *People v Shenoskey*, 320 Mich App 80, 82; 903 NW2d 212 (2017). Under the plain error rule, defendant must establish (1) that an error occurred, the error was plain (i.e., clear or obvious), and (3) that the error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. (citation omitted). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, citation, and alteration omitted). When reviewing an unpreserved claim of prosecutorial misconduct, reversal is not warranted if a curative instruction could have alleviated the prejudicial effect of any improper argument. *People v Callon*, 256 Mich App 312, 329-340; 662 NW2d 501 (2003).

It is well established that "[a] prosecutor has the responsibility of a minister of justice, not simply that of an advocate." *People v Jones*, 468 Mich 345, 354; 662 NW2d 376 (2003). Thus, the test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). We review claims of prosecutorial misconduct on a case-by-case basis, "examining the pertinent portion of the record and evaluating the prosecutor's remarks in context." *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003) (quotation marks and citation omitted).

Generally, "[a] prosecutor need not confine argument to the blandest of all possible terms, but has wide latitude and may argue the evidence and all reasonable inferences from it." *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001) (quotation omitted). However, a prosecutor may not appeal to the sympathy of the jury or "urge the jury to convict as part of its civic duty or on the basis of its prejudices." *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). Such conduct by the prosecution improperly asks the jury to convict the defendant not on the basis of his or her individual guilt or innocence, but because of the need to protect the community from individuals like the defendant and from crimes such as those the defendant stands accused of committing. See *Dobek*, 274 Mich App at 63-64 ("A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence.").

In this case, defendant complains of the following portion of the prosecutor's closing argument:

Someone hit Shun on the head with a bottle. They took off running. Do you shoot him and kill him? Is that a reasonable response? Especially, when you know who these people are? You can call the cops. You can do a lot of other things. You're in a hotel with literally more cameras and security guards than probably in Fort Knox. And you make a choice.

He needs to be held responsible for that choice, because that's how the law works. And that's what we're here for, because this isn't just the Defendant's day in Court. This is Shun Glaze's day in Court, too. He's not here with us, but he lost his life on this night. He's dead. He can't come back. He can't testify. He can't tell you what happened in that room. We have to get all that information from all the other people that were there, that we can locate and identify, to find out what happened.

But this isn't just about the Defendant. It's about justice. It's about what is right. It's about what's fair. Mr. Glaze isn't coming back. He's gone. He was a father. He was a son. He was an uncle. He was a nephew. He was a man. And he's gone. Forever. And he deserves justice.

The first two paragraphs do not establish the occurrence of plain error affecting substantial rights. The prosecutor argued from the evidence for defendant's conviction based on that evidence. The third paragraph, standing alone, could potentially be categorized as an appeal to the jury's sympathy for the victim. One could infer from the language used that it posed a type of civic-duty argument, although that inference is not as readily drawn. Assuming that the remarks qualify as plain error, we are convinced that the error did not affect the outcome of the lower court proceedings nor did they affect defendant's substantial rights. The prosecutor's argument did not involve a blanket appeal to the need to protect the community from individuals such as defendant. Moreover, the comments were made in the context of the prosecutor's discussion of the evidence presented at trial and how defendant's actions supported a finding of defendant's intent to kill. The prosecutor did not directly ask the jury to convict defendant out of sympathy or public duty. The record reflects that, even without an objection, the trial court's jury instructions sufficed to protect defendant's substantial rights. In similar circumstances, this Court has found that when the trial court instructs the jury that it must decide the case on the basis of the evidence and advises that the lawyers' remarks are not evidence, such instruction generally suffices to eliminate any prejudice that might have resulted from the prosecutor's remarks. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *People v Thomas*, 260 Mich App 450, 455-456; 678 NW2d 631 (2004); *People v Green*, 228 Mich App 684, 693; 580 NW2d 444 (1998). In this case, the trial court provided such instructions. It also instructed the jury that it "must not let sympathy or prejudice influence your decision." To the extent that the prosecutor's comments can be interpreted as having crossed the line and evoked sympathy for the victim or encouraged the jury to act under civic duty, the trial court's jury instructions cured any prejudice.

Defendant's related claim of ineffective assistance of counsel for not objecting to the prosecutor's remarks also fails. To establish ineffective assistance of counsel, defendant must

show that: (1) counsel's representation "fell below an objective standard of reasonableness"; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

Even if defense counsel's performance fell below an objective standard of reasonableness by not objecting and requesting a curative instruction at the time of the prosecutor's remarks, defendant cannot establish that, but for defense counsel's defective performance, a reasonable probability existed that the outcome would have been different. The prosecution presented evidence from which the jury could find defendant guilty beyond a reasonable doubt of the offense of second-degree murder. Further, the trial court instructed the jury to not let sympathy or prejudice influence its decision, instructed the jury to decide the case only on the basis of the properly admitted evidence, and instructed them that the lawyers' statements and arguments are not evidence. Such instructions sufficed to cure the claimed error. Therefore, even if defense counsel provided ineffective assistance, the record indicates that the trial court sufficiently cured the problem and ensured that defendant received a fair trial and the outcome likely would not have been any different had defense counsel interposed an objection.

## B. DEFENDANT'S STANDARD 4 BRIEF

### 1. INSTRUCTIONS ON SELF-DEFENSE AND MALICE

Defendant argues that the trial court erred by failing to consider whether defendant could defend on the theory of imperfect self-defense to mitigate the crime to manslaughter. Defendant also suggests that the trial court failed to properly instruct the jury on the differences between voluntary manslaughter and second-degree murder, and erred by refusing to instruct the jury on self-defense. Only the latter claim was preserved with an appropriate request at trial. Respecting his other claims of error, after the trial court instructed the jury, defense counsel expressed his satisfaction with the instructions as given and approval of the form of the verdict. In so doing, defendant waived his claims of error concerning failure to instruct on imperfect self-defense and objection to the court's general instructions on second-degree murder and voluntary manslaughter. *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). Defendant's waiver extinguished any error. *Id*. at 215. Nevertheless, we have considered his claims of error and find them meritless.

"Under Michigan law, the doctrine of imperfect self-defense does not exist as a freestanding defense that mitigates a murder to manslaughter because it was not recognized as such under the common law at the time the Legislature codified the crimes of murder and manslaughter." *People v Reese*, 491 Mich 127, 150; 815 NW2d 85 (2012). In *Reese*, our Supreme Court elaborated on its rejection of the doctrine of imperfect self-defense as follows:

> Although we reject the doctrine of imperfect self-defense, many circumstances that involve what the Court of Appeals labeled "imperfect self-defense" can nevertheless provide grounds for a fact-finder to conclude that the prosecution has not proved the malice element that distinguishes murder from manslaughter. However, we emphasize that the operative analysis for the fact-

finder is not whether the circumstances involving "imperfect self-defense" exist. Rather, the operative analysis is whether the prosecution has proved the element of malice beyond a reasonable doubt. This focus rightly turns on the actual elements of murder and manslaughter, rather than any label of "imperfect self-defense" as a judicially created shorthand that risks becoming unmoored from the actual element distinguishing the two crimes. [*Id*. at 150-151 (quotation marks and citations omitted).]

In *People v Mendoza*, 468 Mich 527; 664 NW2d 685 (2003) the Supreme Court discussed how a defendant's actions in the heat of passion in response to provocation negate the element of malice necessary for a conviction of second-degree murder:

[B]oth murder and voluntary manslaughter require a death, caused by defendant, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. However, the element distinguishing murder from manslaughter—malice—is negated by the presence of provocation and heat of passion. [*Id*. at 540.]

In this case, the trial court instructed the jury on the lesser offenses of second-degree murder and voluntary manslaughter consistent with M Crim JI 16.5 (second-degree murder) and with M Crim JI 16.8 and 16.9 (voluntary manslaughter). After instructing on second-degree murder, including the necessary element of malice, the trial court's instructions specifically explained that "[t]he crime of murder may be reduced to voluntary manslaughter if the Defendant acted out of passion or anger brought about by adequate cause and before Defendant had a reasonable time to calm down." The trial court further explained, consistent with the model criminal jury instructions:

For manslaughter, the following two things must be present. First, when Defendant acted, his thinking must be disturbed by emotional excitement to the point a reasonable person might have acted on impulse without thinking twice from passion instead of judgment. The emotional excitement must have been the result of something which would cause a reasonable person to act rationally or on impulse.

The law does not say what things are enough to do this. That is for you to decide.

Second, the killing itself must resulted from emotional excitement. The Defendant must have acted before a reasonable time had passed to calm down and return to reason. The law doesn't say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case.

The record reveals that the trial court properly instructed the jury on the differences between second-degree murder and voluntary manslaughter. Defendant lacked entitlement to a separate instruction on "imperfect self-defense." Further, defendant's assertion that the trial court

-5-

did not properly instruct the jury that it could find him guilty of voluntary manslaughter if he acted under the heat of passion following adequate provocation is not supported by the record.

We also reject defendant's argument that the trial court erred by failing to instruct the jury on self-defense. To establish self-defense, the evidence must demonstrate that the defendant "reasonably believes (a) that he is in immediate danger of unlawful bodily harm from his adversary and (b) that the use of such force is necessary to avoid this danger." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (quotation marks and citation omitted). Generally, an individual who is "not the aggressor in an encounter is justified in using a reasonable amount of force against his adversary," but only if the individual believes that he is in immediate danger of bodily harm and that the use of force is necessary to avoid such imminent danger. *Id*. The defendant has the initial burden of production of "some evidence from which a [fact-finder] could conclude that the elements necessary to establish a prima facie defense of self-defense exist." *Reese*, 491 Mich at 155-156. "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted).

Because deadly force self-defense is justified only where it is necessary to avoid immediate danger, it is required that "the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002). However, "a person is never required to retreat from a sudden, fierce, and violent attack; nor is he required to retreat from an attacker who he reasonably believes is about to use a deadly weapon." *Id*. In the Self-Defense Act (SDA), MCL 780.971 *et seq*., the Legislature "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Dupree*, 486 Mich at 708. The SDA modified the common-law duty to retreat, but the SDA continues to require that a person have an honest and reasonable belief that a danger of death, great bodily harm, or a sexual assault exists to justify the use of deadly force. MCL 780.972(1). The statute provides, in relevant part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.
>
> (b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual. [MCL 780.972(1).]

"[A] defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *People v Guajardo*, 300 Mich App 26, 35; 832

NW2d 409 (2013); see also *Riddle*, 467 Mich at 119, 120 n 8. The testimony at trial indicated that defendant suffered a violent attack by the victim without provocation and defendant did not start the fight in the hotel room. The shooting of the victim at point-blank range in an elevator, however, did not occur during that initial physical altercation in the hotel room. Witnesses testified and video evidence established that the initial fight ended when the victim and his acquaintances retreated and ran away from the hotel room to the hotel elevator. Defendant and his acquaintances then pursued them to the elevator. Video footage established that the victim almost succeeded in escaping but just as the elevator doors were almost completely closed someone put a hand inside, causing the doors to reopen. Defendant entered the elevator and punched one of the men before the victim pushed defendant away. Defendant then shot the victim. The evidence established that the initial encounter inside the hotel room ended, the victim and his acquaintances fled from the hotel room and were no longer a threat of harm to defendant or his acquaintances. Defendant then became the aggressor, chased down the victim, and shot him.

Defendant did not act in self-defense when he attacked the victim in the elevator. Therefore, the trial court did not err by denying defendant's request for a jury instruction on self-defense.

## 2. FIRST-DEGREE MURDER CHARGE AND DEFENSE OF DURESS

Defendant next argues that the trial court erred by submitting the original charge of first-degree murder to the jury because the evidence failed to support the charge. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). We review the evidence in a light most favorable to the prosecution and determine whether the jury could have found each element of the charged crime proved beyond a reasonable doubt. *Reese*, 491 Mich at 139. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime," *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010), and "it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Regardless whether the evidence supported the original charge of first-degree premeditated murder, because defendant was acquitted of that charge, he is not entitled to appellate relief. In *People v Graves*, 458 Mich 476, 486-487; 581 NW2d 229 (1998), our Supreme Court stated that "a defendant has no room to complain when he is acquitted of a charge that is improperly submitted to a jury, as long as the defendant is actually convicted of a charge that was properly submitted to the jury." The Court acknowledged that, where a charge is erroneously submitted to the jury, reversal of a defendant's conviction may be warranted if there are "sufficiently persuasive indicia of jury compromise." *Id*. at 487-488. The Court stated that there *may* be sufficiently persuasive indicia of compromise when "1) logically irreconcilable verdicts are returned, or 2) there is clear record evidence of unresolved jury confusion, or 3) . . . where a defendant is convicted of the next-lesser offense after the improperly submitted greater offense." *Id*. at 488.

In this case, the prosecutor presented sufficient evidence to support the second-degree murder conviction. The video evidence supports the jury's conclusion that defendant intended to shoot the victim. An intent to kill may be inferred "from the use of a dangerous weapon." *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993). Defendant's actions before entering the elevator also support the jury's conclusion that defendant acted deliberately and not out of passion. Unlike his acquaintances, who can be seen in the video footage running toward the elevator, defendant walked slowly toward and then attacked the victim's acquaintance, and defendant then fatally shot the victim.

Defendant argues throughout his Standard 4 brief that, at most, the facts only support a finding that he acted in the heat of passion after being struck in the hotel room. The trial court allowed the jury to consider this defense theory by instructing the jury on voluntary manslaughter as a lesser offense to murder. The jury, however, found defendant guilty of second-degree murder. It is within the province of the jury to determine as a question of fact whether provocation is adequate and to determine "the length of time during which the passions aroused by provocation may be recognized in reducing the offense to manslaughter." *People v Milhem*, 350 Mich 497, 507; 87 NW2d 151 (1957), quoting *People v Holmes*, 111 Mich 364, 369-370; 69 NW501 (1896); see also *People v Tierney*, 266 Mich App 687, 714-715; 703 NW2d 204 (2005) (quotation marks and citation omitted) (explaining that, absent a circumstance where no reasonable jury could find that adequate provocation, "[t]he determination of what is reasonable provocation is a question of fact for the fact-finder"). We will not substitute our judgment for that of the jury regarding whether the circumstances surrounding the killing involved voluntary manslaughter rather than murder.

Although defendant's statement of the question presented suggests the possibility of an improper compromise verdict, defendant does not present any argument concerning this claim. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) (citation omitted). The trial court instructed the jury not to compromise and defendant has not provided any basis for overcoming the presumption that the jury followed the court's instruction. See *Graves*, 458 Mich at 486.

We also reject defendant's related argument that his actions supported a defense of duress. Duress is not a defense to a homicide. *People v Reichard*, ___ Mich ___; ___ NW2d ____ (2020) (Docket No. 157688); slip op at 8-12.

Defendant's ineffective-assistance claim is also without merit. Defense counsel challenged defendant's bindover on first-degree murder, and also requested a directed verdict on this charge at trial. Because the evidence supported defendant's conviction of second-degree murder, counsel did not render ineffective assistance by failing to make a meritless objection regarding submitting the second-degree murder charge to the jury. Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Counsel also requested and obtained a jury instruction on the lesser offense of voluntary manslaughter. The record reflects that the jury considered and decided defendant's guilt based upon the evidence.

3. BINDOVER

Defendant also argues that the trial court abused its discretion when it denied his motion to quash the district court's decision to bind him over on the first-degree murder charge. This issue is moot. "An issue is moot if an event has occurred that renders it impossible for the court, if it should decide in favor of the party, to grant relief." *People v Billings*, 283 Mich App 538, 548; 770 NW2d 893 (2009) (quotation omitted.) In this case, the jury acquitted defendant of first-degree murder. The record reflects that the prosecution presented sufficient evidence to support defendant's conviction of second-degree murder beyond a reasonable doubt and defendant has not established any basis for relief from that conviction. Defendant cannot again be tried on the first-degree murder charge, because that would violate defendant's double jeopardy protections. *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007). Accordingly, defendant's claim of error concerning the bindover decision is moot. *People v Greenberg*, 176 Mich App 296, 302; 439 NW2d 336 (1989); *People v Blackburn*, 135 Mich App 509, 521; 354 NW2d 807 (1984).

### 4. SENTENCE SCORING ERRORS AND REQUEST FOR RESENTENCING

Defendant next argues that he is entitled to resentencing because the trial court departed from the sentencing guidelines recommended minimum sentence range without articulating adequate reasons for departure, and because the court erred in its scoring of the guidelines. We disagree.

Preliminarily, the record does not support defendant's claim that the trial court imposed a departure sentence. Rather, the parties agreed at sentencing that the trial court's scoring of the guidelines placed defendant in the B-III cell of the applicable sentencing grid for second-degree murder, MCL 777.61, for which the guidelines range is 180 to 300 months or life. The trial court sentenced defendant to a minimum term of 240 months, which is within this range. This Court must affirm a sentence within the guidelines range unless the trial court erred in scoring the guidelines or relied on inaccurate information in determining the defendant's sentence. MCL 769.34(10); *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016).

Defendant argues that the trial court erred in scoring the guidelines by assigning 15 points for Offense Variable (OV) 5, MCL 777.35 (psychological injury to member of victim's family), and by assigning 25 points instead of 10 points for OV 6 (intent to kill or injure). We disagree. Only defendant's appellate challenge to the scoring of OV 5 was preserved by an appropriate objection. In reviewing the trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. Unpreserved challenges to the scoring of the guidelines are reviewed for plain error affecting substantial rights. *Kimble,* 470 Mich 305, 310; 684 NW2d 669 (2004).

A trial court must assess 15 points for OV 5 if a "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). In this case, the victim's sister addressed the trial court at sentencing. She commented at length on the effects of defendant's crime on several family members, many of whom had "endured nearly a year of grief counselling." Such evidence supported the trial court's assessment of 15 points for OV 5. *People v Calloway*, 500 Mich 180, 186-187; 895 NW2d 165 (2017).

Respecting OV 6, MCL 777.36(1)(b) and (c) provide that 25 points must be scored if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result" and 10 points must be scored if "[t]he offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life." The trial court's scoring of OV 6 is consistent with the jury's verdict. Defendant asserts that only 10 points should have been assessed under MCL 777.36(2)(b), which provides that a court should "[s]core 10 points if a killing is intentional within the definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent." Although the victim initially struck defendant in the hotel room, the evidence established that the victim and his acquaintances all retreated from the hotel room and fled to the hotel elevator. Upon their retreat, defendant faced no danger of being further victimized. Defendant, however, chose to pursue the victim, confronted him in the elevator, and then shot him. The evidence established that defendant acted as the aggressor and initiated and carried out the deadly encounter. The evidence does not support defendant's contention that he merely responded to being victimized. Under these circumstances, the trial court did not plainly err by assessing defendant 25 points for OV 6.

## 5. INVOLUNTARY MANSLAUGHTER

Defendant also argues that the trial court erred by failing to instruct the jury on involuntary manslaughter. Because defendant did not request an instruction on involuntary manslaughter at trial, and expressed satisfaction with the instructions that were given, he waived this claim of error. *Carter*, 462 Mich at 214-215. Further, the evidence plainly did not support an instruction on involuntary manslaughter. *People v Head*, 323 Mich App 526, 537; 917 NW2d 752 (2018); *Mendoza*, 468 Mich at 546. Involuntary manslaughter "is the unintentional killing of another, without malice, during the commission of an unlawful act not amounting to a felony and not naturally tending to cause great bodily harm; or during the commission of some lawful act, negligently performed; or in the negligent omission to perform a legal duty." *Mendoza*, 468 Mich at 541. "Unlike murder, involuntary manslaughter contemplates an unintended result and thus requires something less than an intent to do great bodily harm, an intent to kill, or the wanton and willful disregard of its natural consequences." *Id*., quoting *People v Datema*, 448 Mich 585, 606; 533 NW2d 272 (1995) (citations omitted.) In this case, no evidence established that defendant did not intend to shoot the victim. Moreover, shooting a weapon directly at the victim at close range does not rationally permit the conclusion that such conduct caused "an unintended result" or evinced "less than an intent to do great bodily harm, an intent to kill, or the wanton and willful disregard of its natural consequences." *Mendoza*, 468 Mich at 541 (citation omitted). Accordingly, defendant lacked entitlement to an instruction on involuntary manslaughter. The trial court, therefore, did not err by not providing the jury such instruction.

Affirmed.

/s/ James Robert Redford
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien