*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 09, 2025
11:25 AM

Plaintiff-Appellee,

v

No. 364843
Wayne Circuit Court
LC No. 21-000487-01-FH

SADE NICOLE KEITH,

Defendant-Appellant.

Before: GARRETT, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

Five-year-old PJ died after he was ejected from a vehicle. The driver of the vehicle, defendant, Sade Nicole Keith, had an extremely high blood alcohol content (BAC) and her driver's license had been suspended. PJ was ejected from Keith's vehicle after she ran a red light, and her SUV collided with another vehicle. Keith appeals by right her jury-trial convictions of involuntary manslaughter, MCL 750.321; operating a motor vehicle while license suspended (OWLS) causing death, MCL 257.904(4); three counts of second-degree child abuse, MCL 750.136b(3); and four counts of operating a motor vehicle while intoxicated (OWI) with an occupant less than 16 years old, MCL 257.625(7)(a)(*ii*). The trial court sentenced Keith to 8 years and 4 months to 15 years' imprisonment for the involuntary manslaughter and OWLS causing death convictions, 5 years and 11 months to 10 years' imprisonment for each second-degree child abuse conviction, and 180 to 365 days' imprisonment for each conviction of OWI with an occupant less than 16 years old. We conclude that the prosecutor's use of Keith's prearrest and postarrest silence did not violate her Fifth Amendment rights, defense counsel did not render ineffective assistance of counsel and did not deny Keith her right to maintain her innocence at trial, and the trial court properly scored Keith's sentencing guidelines. Accordingly, we affirm.

## I. FACTUAL BACKGROUND

Keith's convictions stem from a motor-vehicle collision that occurred after Keith ran a red light. Inside the vehicle with Keith were her two children, one-year-old RP and six-year-old LK, and her friend's two children, three-year-old JJ and five-year-old PJ. It does not appear that LK, JJ, or PJ were in car seats or wearing seat belts when the accident occurred. PJ was ejected from

-1-

the SUV during the collision and suffered fatal injuries. The other children suffered only minor injuries. Keith's driver's license had been suspended, and she was driving approximately 20 miles per hour over the speed limit when the accident occurred. A blood draw a few hours after the accident indicated that Keith's BAC was 0.332.

The prosecution charged Keith with one count of second-degree murder, MCL 750.317; one count of operating while intoxicated causing death or a serious impairment of body function (OWI causing death), MCL 257.625(4); one count of OWLS causing death; three counts of second-degree child abuse; and four counts of OWI with an occupant under 16 years old. Keith's theory of defense at trial was that she lacked the requisite mental state for second-degree murder and that the jury should instead consider the lesser-included offense of involuntary manslaughter. The jury acquitted Keith of second-degree murder and OWI causing death; it convicted her of involuntary manslaughter and the remaining charged offenses. She now appeals by right.

## II. ALLEGED FIFTH AMENDMENT VIOLATIONS

Keith argues that the prosecutor committed prosecutorial misconduct[1] and violated her Fifth Amendment rights by commenting on her prearrest and postarrest silence during closing argument. She also argues that she was denied the effective assistance of counsel when her attorney failed to object to the prosecutor's comments and failed to move to suppress evidence. We address each argument in turn.

## A. STANDARDS OF REVIEW

We review de novo preserved questions of constitutional law. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). We review for clear error a trial court's factual determinations. *Id*. "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (quotation marks and citation omitted).

"[T]o preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) (alteration in original; quotation marks and citation omitted). Because Keith did not do so, she failed to preserve her prosecutorial misconduct arguments for our review. See *id*. We review unpreserved issues "for plain error affecting substantial rights." *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020).

---

[1] Although "prosecutorial misconduct" is a commonly accepted term of art in criminal appeals, it is a misnomer when referring to allegations that do not involve violations of the rules of professional conduct or illegal activity. *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Less egregious conduct involving inadvertent or technical error is more properly characterized as "prosecutorial error." *Id*. at 88. Nonetheless, because Keith uses the term "prosecutorial misconduct," we will do the same.

To avoid forfeiture under the plain error rule three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights. Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 653 (quotation marks and citation omitted).]

Keith preserved her ineffective assistance of counsel argument for this Court's review by moving for a new trial and a *Ginther*[2] hearing in the trial court. See *People v Head*, 323 Mich App 526, 538-539; 917 NW2d 752 (2018). Because an evidentiary hearing was not held, our review is limited to mistakes apparent from the record. *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018). "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. All findings of fact are reviewed for clear error, while the legal questions are reviewed de novo." *Isrow*, 339 Mich App at 531 (quotation marks and citations omitted).

## B. LEGAL PRINCIPLES

A prosecutor commits misconduct if they abandoned their responsibility to seek justice and, by doing so, the defendant is denied a fair and impartial trial. *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).

Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [*People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007) (quotation marks and citations omitted).]

In order to establish ineffective assistance of counsel, a defendant must show that: (1) "counsel's performance fell below an objective standard of reasonableness under prevailing professional norms" and (2) a reasonable probability exists that, "but for counsel's error, the result of the proceedings would have been different." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008) (quotation marks and citation omitted).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

The Fifth Amendment to the United States Constitution protects a defendant from being "compelled in any criminal case to be a witness against himself. . . ." US Const, Am V. "The Fifth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment." *People v Clary*, 494 Mich 260, 265; 833 NW2d 308 (2013). Michigan's Constitution also prohibits a person from being "compelled in any criminal case to be a witness against himself. . . ." Const 1963, art 1, § 17. In addition to protecting an accused from compelled testimony, the Fifth Amendment privilege against self-incrimination protects an accused from being compelled to provide "evidence of a testimonial or communicative nature" against himself. *Schmerber v California*, 384 US 757, 761; 86 S Ct 1826; 16 L Ed 2d 908 (1966).

Under the Fifth Amendment and *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966), "in order to protect the privilege against compelled self-incrimination during custodial police interrogations, the suspect must be warned that he has a right to remain silent [and] that any statement he does make may be used as evidence against him. . . ." *Clary*, 494 Mich at 265 (alterations in original; quotation marks and citation omitted). Custodial interrogation is "questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011) (citations omitted). "For purposes of *Miranda*, interrogation refers to express questioning or its functional equivalent. In other words, [i]nterrogation refers to express questioning and to any words or actions on the part of police that the police should know are reasonably likely to elicit an incriminating response from the subject." *People v Lafey*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 361936); slip op at 9 (alteration in original; quotation marks and citations omitted).

## C. PREARREST SILENCE AND DEMEANOR

Keith asserts that the prosecutor violated her Fifth Amendment rights by discussing during closing argument Keith's failure to provide information to the police before the police arrested her. Keith contends that the prosecutor urged the jury to interpret her prearrest silence as evidence of guilt notwithstanding that a defendant's prearrest silence may be used only for impeachment purposes and, because she did not testify, there was nothing to impeach. See *Jenkins v Anderson*, 447 US 231, 238-239; 100 S Ct 2124; 65 L Ed 2d 86 (1980) ("the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility.")

The prosecutor began her closing argument by addressing the elements of the most serious charge against Keith—second-degree murder. The prosecutor stated, "It is the People's assertion that the Defendant knowingly created a high risk of death or great bodily harm knowing that such harm would be the likely result of her actions." The prosecutor further argued as follows:

> Officer [Talal] Khazaali testified that he tried to get the Defendant's attention [at the scene], tried to get some information from her and she would not answer him back. She didn't actually know what was happening per Officer Khazaali's testimony, crying, yelling, and looking for the kids who were retrieved by [emergency medical services].
>
> Understandably she is upset. Providing information, basic information to the police in a scene like this is of importance.

-4-

Tyler Shulters, the [emergency medical technician], will testify [sic] that she [i.e., Keith] was cooperative until she wasn't and she lied to them [about the children being restrained in proper seats].

She was crying, refused to sign her forms at the hospital, and became silent, again, after she started getting asked too many questions.

You also heard from Officer [Nicholas] Michels and Officer [Derrick] Daniel who had the opportunity to see and observe the Defendant at Detroit Receiving Hospital because they were in charge of her at Detroit Receiving Hospital. She was screaming, yelling, escalated, and would not listen to their requests to calm down to try and keep peace in the hospital. She's in the room with five people. She needed to be a little more quiet.

And Sergeant [David] Fitzpatrick had the same results when he met her at [Detroit] Receiving Hospital. She wouldn't let him get out *Miranda*. She wouldn't let him get out the appropriate information for the blood test. Her attitude is consistent with being intoxicated. Her attitude is consistent with her realization that she's in an awful lot of trouble. Because you know what, she knows she was drinking, and she knows she doesn't have a valid driver's license, and she knows those kids were not restrained, and one of them is no longer with us.

A prosecutor's comments regarding a defendant's silence before *Miranda* warnings have been given and before custodial interrogation do not violate the defendant's constitutional right to remain silent. *People v McGhee*, 268 Mich App 600, 634; 709 NW2d 595 (2005). A "defendant's right to due process is implicated only where his silence is attributable to either an invocation of his Fifth Amendment right or his reliance on the *Miranda* warnings." *People v Solmonson*, 261 Mich App 657, 664-665; 683 NW2d 761 (2004). In other words, "[a] prosecutor may not comment on a defendant's silence in the face of accusation . . . ." *McGhee*, 268 Mich App at 634.

The record does not show that Keith's failure respond to Officer Khazaali's questions was attributable to her invocation of her Fifth Amendment privilege against self-incrimination. Officer Khazaali testified that, when he arrived at the accident scene, he observed an ambulance, some police vehicles, a couple of witnesses, and some children. He also saw Keith and asked her for information regarding the children, including their names, but she was not cooperative. Notably, Officer Khazaali's questions were not accusatorial in nature, but rather, he asked the questions to determine the status of events at the scene, which was chaotic. This Court has previously recognized that an officer's on-the-scene questions that were not intended to elicit an incriminating response do not implicate *Miranda*. See *People v Jackson*, 37 Mich App 664, 668-669; 195 NW2d 312 (1972).[3] Officer Khazaali was clearly "reacting naturally and spontaneously to the scene before him. It was a routine means of commencing an investigation and not an inquiry made

_____

[3] Although published decisions of this Court issued before November 1, 1990, are not binding under MCR 7.215(J)(1), they are nevertheless precedential under the rule of stare decisis pursuant to MCR 7.215(C)(2). *People v Darga*, ___ Mich App ___, ___ n 6; ___ NW3d ___ (2023) (Docket No. 363178); slip op at 9.

pursuant to an already-launched investigation." See *id*. at 669. Because Keith's prearrest silence was not constitutionally protected, she has not shown that the prosecutor violated her Fifth Amendment rights. See *People v Schollaert*, 194 Mich App 158, 166; 486 NW2d 312 (1992). Further, because no plain error occurred, defense counsel did not render ineffective assistance of counsel by failing to object to the prosecutor's remarks. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

### D. POSTARREST SILENCE AND DEMEANOR

Keith also argues that the prosecutor violated her Fifth Amendment protections by using her postarrest, pre-*Miranda* silence and conduct against her. She asserts that she was undoubtedly under arrest at Detroit Receiving Hospital because she was handcuffed and informed numerous times that she was in custody, yet she was not *Mirandized*. She contends that, notwithstanding the police officers' failure to provide *Miranda* warnings, the prosecutor used her silence against her at trial. She also maintains that although her conduct was nonverbal, the prosecutor violated her Fifth Amendment rights by arguing to the jury that her conduct constituted an admission of guilt.

In support of her argument, Keith relies on the testimony of three[4] police officers. Officer Michels described Keith's behavior at the hospital as "loud, obnoxious, [and] screaming." He testified that he did not recall whether he spoke with Keith at the hospital or at the accident scene. He testified: "I don't recall if I was attempting to get information from her. I know at some point I had a conversation or we had spoken or I tried to. I don't remember exactly where or when on the scene or if it was on the scene [sic]." Officer Michels did not testify that Keith refused to answer his questions, and he did not testify that it appeared from her demeanor that she knew that she was guilty. As previously stated, he merely described her as "loud, obnoxious, [and] screaming."

Officer Daniel testified that he attempted to speak to Keith at the hospital, but she would not listen to him, she was irate and uncooperative, and she kept talking about the accident. He also testified that Keith kept talking over him as he was trying to talk to her and calm her down so that the hospital staff could work with her. He denied that he tried to obtain any information from her. Sergeant Fitzgerald testified that he obtained a search warrant for a blood draw and tried to tell Keith that he had done so and that a blood draw would be conducted. He described Keith's demeanor as "very agitated," and "loud, screaming." He testified that she would not allow him to inform her about the search warrant and to advise her of her rights. He maintained that he was unable to communicate with her.

Therefore, the record shows that Keith was not subjected to custodial interrogation at the hospital. "*Miranda* warnings are not required unless the accused is subject to a custodial interrogation." *Steele*, 292 Mich App at 316. The record also shows that the prosecutor did not

---

[4] Keith asserts in her brief on appeal that four police officers testified about her silence and conduct at the hospital, but Officer Khazaali testified only about Keith's silence and conduct at the accident scene and in the ambulance.

comment during closing argument that Keith was silent at the hospital or otherwise use her silence against her. Further, to the extent that Keith maintains that her conduct was testimonial or communicative in nature, and therefore protected under the Fifth Amendment,[5] her argument lacks merit. The Fifth Amendment only protects against *compelled* self-incrimination. *People v Wyngaard*, 462 Mich 659, 671-672; 614 NW2d 143 (2000). The law enforcement officers did not compel Keith's conduct and no evidence indicates that Keith's conduct was in response to statements that they made to her. Rather, the evidence showed that Keith ignored their attempts to communicate with her.

Accordingly, Keith has failed to establish plain error with respect to the officers' testimony and the prosecutor's comments during closing argument. Further, because the prosecutor did not engage in misconduct, defense counsel did not render ineffective assistance of counsel by failing to move to suppress Keith's postarrest silence or conduct or by failing to object to the prosecutor's remarks.

## III. ALLEGED SIXTH AMENDMENT VIOLATIONS

Keith next argues that her trial attorney violated her Sixth Amendment right to maintain her innocence by conceding that she was guilty of involuntary manslaughter. She also contends that, by doing so, her trial attorney denied her the effective assistance of counsel. We disagree with both arguments.

## A. STANDARDS OF REVIEW

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *Isrow*, 339 Mich App at 531 (quotation marks and citations omitted). We review questions of constitutional law de novo and review for clear error the trial court's factual determinations. *Williams*, 475 Mich at 250. Because an evidentiary hearing was not held, our review of Keith's ineffective assistance of counsel claim is limited to mistakes apparent from the record. *Muhammad*, 326 Mich App at 63.

Violation of a defendant's Sixth Amendment right to maintain her innocence at trial is a structural error that is not subject to harmless-error review. *McCoy v Louisiana*, 584 US 414, 427; 138 S Ct 1500; 200 L Ed 2d 821 (2018). If error occurred, a new trial is required. *Id*. at 428.

## B. LEGAL PRINCIPLES

The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel at all critical stages of a criminal proceeding. *People v King*, 512 Mich 1, 11; 999 NW2d 670 (2023). "Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue, what evidentiary objections to raise, and

---

[5] See *People v Burhans*, 166 Mich App 758, 761-762; 421 NW2d 285 (1988) ("The constitutional privilege against self-incrimination protects a defendant from being compelled to testify against himself or from being compelled to provide the state with evidence of a testimonial or communicative nature.").

what agreements to conclude regarding the admission of evidence." *McCoy*, 584 US at 422 (quotation marks and citation omitted). Other decisions, however, are reserved for the client, including whether to maintain innocence at trial. *Id.* When a client expressly asserts the desire to maintain her innocence, her lawyer must abide by the client's decision "and may not override it by conceding guilt." *Id*. at 423. Notably, an attorney's obligation to maintain their client's innocence and not concede guilt requires that the client expressly told her attorney that she did not want to concede guilt. *People v Klungle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 364125 and 367795); slip op at 3.

## C. ANALYSIS

No record evidence suggests that Keith did not want to concede guilt—let alone that she told her trial attorney that she did not want to concede guilt. Rather, a review of the record indicates that the goal, beginning with the preliminary examination, was to avoid a second-degree murder conviction. While defense counsel made repeated efforts to resolve the matter before trial, including on the day of trial, Keith made it clear that she did not want to accept the offers and plead to second-degree murder.[6] It is apparent from defense counsel's opening statement and questioning of witnesses that her strategy was to convince the jury that reasonable doubt existed with respect to the second-degree murder charge. After the prosecution rested, defense counsel moved for a directed verdict on the second-degree murder charge and sought a jury instruction on involuntary manslaughter as a lesser-included offense of second-degree murder. The trial court denied the directed-verdict motion. After a brief recess to allow defense counsel to discuss the jury instruction with Keith, the trial court granted the jury-instruction motion. Keith did not express disagreement with counsel's decision to request the instruction.

During closing argument, defense counsel maintained that the evidence did not support a second-degree murder conviction. Counsel also argued, however, that she was not asking the jury to "excuse everything." She admitted that some jurors might think that Keith's actions were grossly negligent. Counsel urged the jury to acquit Keith of second-degree murder and further stated, "certainly you can consider the lesser offense of involuntary manslaughter and the other charges . . . ." Notably, counsel did not outrightly concede that Keith was guilty of involuntary manslaughter. After the jury delivered its verdict, counsel asked the trial court to allow Keith to remain on bond pending sentencing. In doing so, counsel stated:

> Your Honor, so she knew this day was going to come. I don't think there has ever been a question as to whether or not she was going to do prison time. That was there. The question of course was always whether it was second degree or something less than that.

---

[6] Contrary to Keith's argument on appeal, defense counsel did not express frustration with Keith for turning down the last-minute plea offer on the day of trial, and counsel did not indicate that she was unprepared to proceed to trial. Rather, counsel expressed frustration with the prosecutor and moved to adjourn trial because the prosecutor turned over "a slew of reports" shortly before trial. The trial court denied the motion.

Similar to *Klungle*, ___ Mich App at ___; slip op at 3, the record in this case does not reflect that Keith told her attorney that she did not want to concede guilt or that she did not want her attorney to suggest to the jury that she might be guilty of something other than second-degree murder. Keith first expressed disagreement with her attorney's trial strategy when she moved for a new trial after sentencing. Considering that Keith's minimum sentencing guidelines range for second-degree murder was 22½ to 37½ years' imprisonment, defense counsel's trial strategy did not fall below an objective standard of reasonableness.

In sum, defense counsel's actions did not violate Keith's Sixth Amendment rights because nothing indicates that Keith expressly told her attorney that she wanted to maintain her innocence at trial. See *McCoy*, 584 US at 423-424. See also *Klungle*, ___ Mich App at ___; slip op at 3-4. In addition, Keith has failed to demonstrate that her attorney's performance fell below an objective standard of reasonableness.

## IV. ALLEGED SENTENCING ERRORS

Next, Keith challenges the scoring of her sentencing guidelines. She argues that the trial court impermissibly double counted her level of culpability by assessing points for offense variable (OV) 6, MCL 777.36 (intent to kill or injure another individual), and OV 17, MCL 777.47 (degree of negligence exhibited). She also argues that the court erroneously assessed 10 points for OV 9, MCL 777.39(1) (number of victims), and engaged in impermissible judicial fact-finding when it assessed 20 points for OV 18, MCL 777.48 (ability to operate vehicle affected by alcohol or drugs). We address each argument in turn.

## A. STANDARDS OF REVIEW

We review de novo whether a trial court properly interpreted and applied the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). We review for clear error the trial court's factual determinations, which "must be supported by a preponderance of the evidence." *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016) (quotation marks and citation omitted). A preponderance of the evidence is evidence that "has more convincing force and the greater probability of truth" when compared to opposing evidence. *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008).

## B. OV 6 AND OV 17

OV 6 pertains to "the offender's intent to kill or injure another individual." MCL 777.36(1). MCL 777.22(1) directs trial courts to score OV 6 "for homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or assault with intent to commit murder." Under MCL 777.36(1)(c), 10 points should be assessed for OV 6 if the defendant acted with "gross negligence amounting to an unreasonable disregard for life[.]"

OV 17 addresses the "degree of negligence exhibited." MCL 777.47(1). MCL 777.22(1) directs that OV 17 be scored regarding "crimes against a person" if "the offense or attempted offense involve[d] the operation of a vehicle. . . ." MCL 777.47(1)(b) directs trial courts to assess five points for OV 17 when "[t]he offender failed to show the degree of care that a person of ordinary prudence in a similar situation would have shown[.]" In addition, MCL 777.47(2) instructs trial courts not to score 10 points for OV 17 if the court assessed points for OV 6.

-9-

Keith argues that the trial court erred by assessing 10 points for OV 6 and five points for OV 17. She contends that, by assessing points for both variables, the trial court impermissibly "double counted" her degree of negligence. We disagree. "It is well established that impermissible double counting occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v Duke*, 870 F3d 397, 404 (CA 6, 2017) (quotation marks and citation omitted). However, impermissible double counting does not occur when points are assessed for two sentencing variables that serve different purposes. *People v Maben*, 208 Mich App 652, 655; 528 NW2d 850 (1995).

OV 6 and OV 17 serve different purposes. OV 6 addresses an offender's state of mind in cases involving homicide and assault with intent to commit murder. See MCL 777.22(1); MCL 777.36. OV 17, on the other hand, concerns an offender's degree of negligence with respect to vehicular-related crimes that do not necessarily involve homicide or an effort, plan, or intent to kill. See MCL 777.22(1); MCL 777.47. Because OV 6 and OV 17 serve different purposes, impermissible double counting did not occur. See *Maben*, 208 Mich App at 655; *People v Jarvi*, 216 Mich App 161, 163-164; 548 NW2d 676 (1996).

## C. OV 9

Keith next argues the trial court erred by assessing 10 points for OV 9 when scoring the guidelines for involuntary manslaughter and OWLS causing death. MCL 777.39(1)(c) directs trial courts to assess 10 points for OV 9 if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." Keith asserts that the trial court should have assessed zero points for OV 9 because "[t]here were fewer than 2 victims who were placed in danger of physical injury or death" as stated in MCL 777.39(1)(d). Keith contends that only PJ was a victim because he was the only person who died as a result of the accident.

"Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *McGraw*, 484 Mich at 135. Keith's argument that the trial court should have counted only PJ as a victim of the sentencing offenses—involuntary manslaughter and OWLS causing death—lacks merit. MCL 777.39(2)(a) directs that "each person who was placed in danger of physical injury or loss of life" should be counted as a victim. See also *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004). "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Teike*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363705); slip op at 3 (quotation marks and citation omitted).

A preponderance of the evidence supports the trial court's determination that "2 to 9 victims . . . were placed in danger of physical injury or death" during the motor-vehicle accident. Although only PJ died as a result of the accident, three other children were also in Keith's vehicle, which collided with another vehicle and put that driver at risk of physical injury or death. In addition, with the possible exception of one-year-old RP, who may have been in a car seat, it appears that the children were unrestrained in Keith's vehicle, which resulted in PJ's ejection from the SUV. Accordingly, the trial court properly assessed 10 points for OV 9.

## D. OV 18

Finally, Keith argues that the trial court erroneously assessed 20 points for OV 18 based on judicial fact-finding in violation of *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). MCL 777.48(1)(a) instructs trial courts to assess 20 points for OV 18 if the defendant "operated a vehicle . . . when his bodily alcohol content was 0.20 grams or more per 100 milliliters of blood. . . ." Keith asserts that the trial court should have assessed only 10 points for OV 18 because, although the jury clearly determined that her BAC was 0.08 or higher since it convicted her of OWI while intoxicated with an occupant less than 16 years old, nothing indicates that the jury determined that her BAC was 0.20 or higher. She maintains that the jury may have believed the evidence at trial that cast doubt on her level of intoxication, including the testimony showing that PJ's mother did not think that her behavior was abnormal and that none of the police officers at the scene conducted field-sobriety tests. MCL 777.48(1)(c) directs that 10 points be assessed for OV 18 if the offender's BAC was "0.08 grams or more but less than 0.15." Keith maintains that OV 18 should have been assessed 10 points instead of 20 points.

Keith's *Lockridge* argument lacks merit. As this Court stated in *People v Biddles*, 316 Mich App 148, 158-159; 896 NW2d 461 (2016):

> The constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with required application of those found facts for purposes of increasing a *mandatory* minimum sentence range. *Lockridge* remedied this constitutional violation by making the guidelines advisory, not by eliminating judicial fact-finding.

> \* \* \*

> That judicial fact-finding remains part of the process of calculating the guidelines is evidenced by the *Lockridge* Court's observation that its "holding today does nothing to undercut the requirement that the highest number of points possible must be assessed for all OVs, *whether using judge-found facts or not*." [*Lockridge*, 498 Mich] at 392 n 28 (second emphasis added). This quote from *Lockridge* is consistent and reconcilable with the full *Lockridge* opinion; judicial fact-finding is proper, as long as the guidelines are advisory only. [Some emphasis omitted.]

Because the sentencing guidelines are advisory only, the trial court properly assessed 20 points for OV 18 on the basis of judicial fact-finding.

## V. CONCLUSION

The prosecutor did not comment on Keith's silence in violation of her Fifth Amendment rights. In addition, trial counsel did not render ineffective assistance of counsel, and Keith was

not denied her right to maintain her innocence at trial.  Finally, the trial court properly scored Keith's sentencing guidelines.  Accordingly, we affirm.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle